Ora **KIVETT**, Respondent,

v.

**Wirt W. STANLEY, Administrator,**
**Appellant.**

No. 22505.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1957.

Don C. Carter, Sturgeon, for appellant.

Wilbur F. Daniels, Fayette, for respondent.

SPERRY, Commissioner.

Plaintiff is the daughter of J. E. Stanley, deceased. Wirt W. Stanley is administrator. Plaintiff sued the estate for the value of her services rendered to deceased during the last 52 months of his life. Trial to a jury resulted in a verdict and judgment for plaintiff, in the amount of $7,500, from which the administrator prosecutes this appeal.

Deceased's wife died in 1945. He was then about 75 years of age and lived on a farm, which he owned. In 1947, he suffered a stroke and, after release from hospital, he went to the home of plaintiff and her husband, in Glasgow, Missouri. Plaintiff's husband testified to the effect that, some days afterward, he heard deceased tell plaintiff that he couldn't go home, had no place to stay, wanted to live with plaintiff and her husband, wanted her to take care of him, and that he would pay her well. He stated that plaintiff agreed that she would take care of him and deceased moved

into the house with them; that plaintiff, thereafter, until deceased's death, cared for him, furnished and paid for his food, did his laundry, furnished him with whiskey and beer as needed, according to medical advice, took him to and from the hospital and the bank, etc. Witness stated that, in 1948, deceased wanted to buy a house, larger than the one rented and occupied by plaintiff and her husband; that he purchased a home for $7,500; that they all moved into it and lived there until deceased died; that deceased told plaintiff that she would get the house at his death; that plaintiff and witness paid deceased $18 per month rent on the house; that plaintiff paid for the food and liquor for deceased, out of her wages for working at a liquor store owned by witness; that witness desired to build a garage and breezeway on the house purchased and owned by deceased, and deceased told him to do what he liked about it, that plaintiff would get the house after deceased died; that he made the improvements, at a cost of $2,501, and was reimbursed from proceeds of the sale of the house, realized on a partition sale, after deceased died.

■ A number of other witnesses, of high character, including a banker and the administrator, gave testimony tending to corroborate the testimony of Mr. Kivett. There was ample evidence from which the jury could have found that plaintiff gave deceased excellent care during his serious illness, for a period of 52 months, and that the reasonable value of her services was $7,500. There was also substantial evidence to the effect that deceased expected to pay for said services and that plaintiff expected to be reimbursed therefor. Chandler v. Hulen, 335 Mo. 167, 71 S.W.2d 752, 756.

Defendant offered the testimony of one of deceased's sons, and of Mrs. Gilbert. Reference will be made to that testimony later.

■ Defendant's first contention is that it was error to give plaintiff's Instruction 5 because it commingles and permits recovery on two different theories, to-wit: express and implied contract. Plaintiff's pleading was a simple demand, framed in *quantum meruit,* and recovery was sought on *quantum meruit.* Defendant filed no pleading. The evidence tended to establish that deceased agreed to pay; that plaintiff expected she would be paid "well" for her services; that she would "lose nothing"; that she would be paid in some manner. The instruction followed the pleading and the evidence. Plaintiff could have sued on an express contract, for its breach, or she could have abandoned the express contract and have sued on *quantum meruit* for the reasonable value of her services, and offer the contract as evidence. Muench v. South Side National Bank, Mo., 251 S.W.2d 1, 5; Joseph v. Joseph, Mo.App., 164 S.W.2d 145, 149. This latter course she followed, and there was no error in the instruction on the ground stated.

■ It is urged that the court erred in giving Instruction P4, because "it assumes that plaintiff would not be permitted to testify." By that instruction the jury was informed that since one party to the contract was dead the other party was incompetent to testify as to acts or contracts between them. We will not reverse a judgment unless it is for an error materially affecting the merits of the action. Schraedel v. St. Louis Public Service Company, Mo.App., 248 S.W.2d 25, 33; Papen v. Friedmeyer, Mo.App., 255 S.W.2d 841, 846. The error here complained of, if it is error, would not have influenced the jury to find a verdict for plaintiff.

■ Complaint is made of the refusal of the trial court to give Instruction "A," at the instance of defendant. No error was committed in that regard because Instruction "P5" covered the territory fully and "A" might have tended to confuse the jury for the reason that the jury was told therein that, in order to find for plaintiff, it must find that an *express* contract existed whereby deceased agreed to pay and

plaintiff intended to charge for the services. The suit was on *quantum meruit,* not an express contract. It would not have aided the jury in any way.

Defendant complains of the court's refusal to give Instruction "B". That instruction was purely cautionary and in the nature of an abstract declaration of law. At most, its refusal was within the sound discretion of the trial court. It would not have materially aided the jury in its duties, for the case was well covered in other instructions. Williams v. Guyot, 344 Mo. 372, 126 S.W.2d 1137, 1143.

Mrs. Gilbert, a witness for defendant, testified to the effect that she was performing nursing services in Glasgow during the winter of 1950; that she had a room in plaintiff's and deceased's home during a part of the time; and that she talked to deceased on various occasions. Defendant offered her testimony to the effect that she heard deceased ask plaintiff to stay with him; that he said he was lonely; and that she heard plaintiff say: "If you want anybody to stay with you, you'll have to get them, because I'm not going to stay with you. I'm going to stay at the liquor store— that is where I make my living." Upon objection the testimony was excluded.

This testimony was not contradictory of any other evidence in the case. Plaintiff's evidence was all to the effect that she worked at her husband's liquor store regularly; that she would go there at about 11 a. m., stay awhile, and return home; that she would go to the store again at about 5 p. m., and remained until late at night. Witness Gilbert was permitted to state in evidence that while she roomed at plaintiff's house, three weeks, she went on duty at 9 p. m., and, after returning at 7 a. m., she slept until 3 p. m.; that plaintiff was not at home during the time witness roomed there; that plaintiff told her that she went to the liquor store. It was also in evidence that plaintiff was paid $4 per day for her work at the store; that, with her earnings, she paid for a maid's service in laundering and caring for deceased; and that she paid for deceased's food, liquor, and beer.

A similar complaint is made of the court's rejection of J. B. Stanley's proffered testimony, to the effect that plaintiff stated to him that she had told deceased, when he asked her to "stay" with him, that she would not, that if he wanted someone to stay with him he would have to get a nurse. Plaintiff is suing for the reasonable value of the services she rendered. They do not include a constant companionship, and her evidence, as well as that of defendant, shows that she worked at the store regularly, every day, until late at night; that, during a major portion of the hours she was at the store, and not at home with deceased. What we have said applies to defendant's contention as to the testimony of both Stanley and Gilbert.

Defendant charges error because the court ruled adversely on his attempt to inquire why plaintiff did not intervene in a partition suit involving the house which deceased bought, and claim it as having been promised to her in payment of her services. As was stated in Joseph v. Joseph, supra, plaintiff was at liberty to elect as to which of three remedies open to her she would pursue. It was her free choice; and it is immaterial, in this case, that she chose to proceed as she did instead of by one of the other methods available to her. Her failure to proceed differently was not a proper subject of inquiry, or of comment to the jury.

In the closing argument to the jury counsel for plaintiff made the following statement, to which defendant then, and now, except, as being an improper appeal for sympathy.

"Mr. Daniels: * * * On behalf of the claimant, I want to say to you we're all faced with this getting old and feeble. Some take care of us, and

some don't, and in this case there's a woman with a crippled husband, who can't get around, who was good enough * * *

"Mr. Carter (Interrupting): We object to the pleas of sympathy to the jury."

Plaintiff's husband was a cripple, had testified as a witness, and his condition was known to the jury. In such situations as that presented here, the trial court has a wide discretion in permitting or restraining jury arguments and his ruling will, usually, be deferred to on appeal unless such arguments pass legitimate bounds so as to be manifestly prejudicial and the rulings thereon a clear abuse of discretion. Cordray v. City of Brookfield, Mo., 88 S.W.2d 161, 165. The matter was considered by the trial court in passing on the motion for a new trial. We will defer to the court's ruling in this case.

Defendant complains that witness Marie Elder was not qualified to express an opinion as to the value of plaintiff's services. Mrs. Elder was then, and had been for several years, a practicing nurse. She heard the testimony as to the kind and quantum of services that plaintiff rendered to deceased. She stated that the services were worth $4 per day. We think that she was fully qualified to testify on this subject, if expert testimony was needed for the guidance of the jury.

The judgment does not appear to be excessive; it was for the right party, and there appears of record no error materially affecting the merits of the case or prejudicial, so as to require reversal in the interests of justice. It should be affirmed.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.